DECISION
Before the Court is Plaintiffs' motion for a temporary restraining order to prevent the Department of Administration ("DOA") from continuing to implement an emergency regulation. This emergency regulation's language is substantially the same as that of Executive Order 08-01.
 I Facts and Travel
Governor Carcieri's Executive Order relates to the E-Verify program, an internet based system established by the U.S. Department of Homeland Security in partnership with the Social Security Administration. The Executive Order provides:
 "The Department of Administration shall require that all persons and businesses, including grantees, contractors and *Page 2 
their subcontractors and vendors doing business with the State of Rhode Island also register and utilize the services of the E-Verify program to ensure compliance with federal and state law." Exec. Order No. 08-01.
The E-Verify program provides a database whereby employers may verify employee eligibility status to work legally within the United States. On or about July, 29, 2008, DOA began mailing notices to all businesses and individuals contracting with the State (hereinafter collectively referred to as "vendors") requiring said vendors within forty-five (45) days to certify to the State that they are registered for the E-Verify program and use it to confirm that those they hire are authorized to work in the United States.
The Plaintiffs filed a motion for a temporary restraining order to restrain the DOA from implementing the Executive Order. This Court, on September 15, 2008, denied the temporary restraining order. However, this Court also found that it was more likely than not that the Director of Administration had not followed the APA when he failed to provide the notice, hearing and comment period. This Court instructed the DOA not to suspend or terminate any current contracts with the State until a final rule had been promulgated.
On October 17, 2008, the DOA, in compliance with the court order, gave notice to begin the comment and hearing period for a final regulation. At the same time, it created an interim regulation pursuant to G.L. 1956 section 42-35-3(b), titled "Emergency Regulation Re: Requirement to Register with and Utilize Federal E-Verify Program." In the text of the emergency regulation, the DOA sets out two emergent circumstances. First, it provides that due to recent developments in the State demonstrating that many undocumented foreign workers were working in government buildings containing sensitive documents, it was necessary to implement the emergency regulation. Second, *Page 3 
the text indicates that due to the high unemployment rate in Rhode Island it was necessary to ensure that in the future, those who are hired to work for the State are those eligible to work legally. The emergency regulation also states that it is a prospective regulation in that it will not affect any current contracts a vendor has with the State.
In response to the emergency regulation, the Plaintiffs filed a motion to find Defendants in contempt and for a temporary restraining order. On November 12, 2008, this Court ruled that the Defendants were not in contempt and requested further briefing by the parties on the issue of the temporary restraining order. On or about November 19, 2008, the Court received the Defendants' brief and on November 21, 2008, the Court received the Plaintiff's brief.
 II Standard of Review
The Plaintiffs seek to have this Court issue a temporary restraining order to prevent the DOA from continuing to effectuate the Emergency Regulation. In order for such an order to issue, the Court must determine:
 "(1) [w]hether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balancing of the equities, including the public interest, weigh in favor of the moving party; and (4) whether the issuance of [the temporary retraining order] serve[s] to protect the status quo ante." Sch. Comm. of N. Kingstown v. Crouch, 808 A.2d 1074, 1077 (R.I. 2002) (citing Iggy's Doughboys Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)).
It is within the sound discretion of the Court as to whether to grant an injunction. See Brown v. Amaral, 460 A.2d 7, 10. (R.I. 1983). *Page 4 
 III Analysis
According to § 42-35-3, an agency must provide notice and a comment and hearing period before a final regulation can take effect. However, there is an exception to that rule, often referred to as the emergency exception. That exception states:
 "If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon less than thirty (30) days' notice, and states in writing its reasons for that finding, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt an emergency rule. The rule so adopted may be effective for a period of not longer than one hundred twenty (120) days renewable once for a period not exceeding ninety (90) days, but the adoption of an identical rule under subdivisions (a)(1) and (a)(2) is not precluded." Section 42-35-3(b).
The Plaintiffs contend that the Court should review the emergency regulation the same way the federal courts would review an emergency regulation promulgated under the Federal APA "good cause" exception.See 5 U.S.C. § 553. Under the Federal APA, it has been stated, "[i]t should be clear beyond contradiction or cavil that . . . the various exceptions to the notice-and-comment provisions of section 553 will be narrowly construed and only reluctantly countenanced." New Jersey v.United States Environmental Protection Agency, 626 F.2d 1038, 1045 (D.C. Cir. 1980). The Plaintiffs also contend that under the Federal APA, the court is obligated to independently review the agency's "good cause" circumstance. See Council of Southern Mountains, Inc. v. Donovan,653 F.2d 573, 580 (D.C. Cir. 1981). The Plaintiffs argue that this standard should be applied in this situation, and thus the burden is on the agency to prove an emergent circumstance. *Page 5 
The Defendants contend that the Court should look to other states such as Massachusetts, Virginia, and California, where the courts give deference to the agency when deciding if the circumstances are emergent. For example, in Massachusetts, "such a finding is given every presumption in its favor and is not subject to question in judicial proceedings unless palpably wrong." American Grain Products ProcessingInstitute v. Dept. of Public Health et al., 467 N.E.2d 455, 466 (M.A. 1984) (citing Robinson v. Secretary of Admin., 425 N.E.2d 772 (M.A. 1981)).[1] Those states, like Rhode Island, have each adopted language different from that of the Federal APA.
The law of Rhode Island is limited on this specific issue. However, this Court finds that regardless of whether it follows the Federal APA case law and conducts an independent review or follows case law of other states, which establish a presumption in favor of the agency, sufficient emergent circumstances exist for the emergency regulation. After reviewing applicable Rhode Island law, this Court finds that the economic and security rationale for E-Verify regulations are certainly no less emergent than those economic considerations set out inBurrillvill Racing Ass'n v. Scott, No. 86-3657, 1987 WL 882265
(R.I.Super.Ct. Jan. 9, 1987) (The Superior Court concluded that the regulations establishing a fee structure regarding the drug testing of race dogs was emergent to avert other budget constrictions for the Department of Health.) and those in Park v. Rizzo Ford, 893 A.2d 216
(R.I. 2006) (The Supreme Court decided that the circumstances were emergent to require a title preparation fee to be no more than $20. That emergency rule was implemented to prevent the consumer from being harmed by unfair business practices of new and used car dealers.) Therefore, the Court concludes *Page 6 
that the circumstances are sufficiently emergent in this matter to support the adoption of an emergency regulation.
Furthermore, the Court is not satisfied that any Plaintiff will suffer irreparable harm as a result of the emergency regulation. This emergency regulation is prospective in its language; it does not pertain to any current contracts with the State. None of the Plaintiffs before this Court have been denied contracts or renewal of contracts with the State.[2] Additionally, the comment and hearing period for the final regulation ends December 3, 2008, and it is reasonable to conclude that the DOA will implement a final regulation soon thereafter. It is unlikely that any of the Plaintiffs will be denied a contract or denied a renewal or extension of a contract prior to the implementation of the final regulation.
Moreover, the balancing of the equities does not weigh in favor of the Plaintiffs. The emergency regulation will only be in effect for the short period of time between now and when the final regulation will take effect. The Plaintiffs face no additional hardship at this time under the emergency regulation. On the other hand, the Defendants would risk the possibility of entering into contracts with entities that employ undocumented foreign workers prior to the implementation of the final regulation.
The Court notes that during conferences regarding this matter, counsel indicated that an evidentiary hearing would not be necessary to adjudicate this matter on its ultimate merits. Counsel are therefore directed to provide to this Court on or before December 12, 2008, a scheduling order for submitting stipulated facts and briefs. *Page 7 
 IV Conclusion
For the above reasons, this Court denies the motion for issuance of a temporary restraining order and directs counsel to prepare an order consistent with this decision.
[1] See Comm. of Concerned Citizens for Property Rights v. ChesapeakeBay Local Assistance Bd., 426 S.E.2d 499 (V.A. 1993); SchenleyAffiliated Brands Corp. v. Kirby, 21 Cal. App. 3d 177 (C.A. 1971).
[2] However, if an entity not named as a Plaintiff in this action were to face harm renewing or entering into a contract with this state, that entity could seek relief from the Court.